UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ANDRE BUTLER,

       Defendant.
_____/

Case No. 18-20256

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR HOME CONFINEMENT (Dkt. 186)**

On August 27, 2020, Defendant Andre Butler filed a motion for home confinement (Dkt. 186). The Government filed a response (Dkt. 191), and Butler filed a reply (Dkt. 193). The Court denied Butler's motion (Dkt. 194), for reasons set forth in an opinion that was issued after an appeal was taken (Dkt. 199). The Sixth Circuit disregarded the Court's opinion setting forth the reasons for the denial, vacated the denial, and remanded the matter for further proceedings (Dkt. 208). The Court subsequently issued an order allowing the parties to submit supplemental briefing on the motion (Dkt. 213). Butler filed a supplemental brief (Dkt. 216), as did the Government (Dkt. 226).

Butler, who pleaded guilty to conspiracy to possess with intent to distribute and to distribute heroin, is currently serving a ten-year term of imprisonment. See Judgement (Dkt. 169). His projected release date is July 9, 2028. In his motion, Butler seeks to serve the remainder of his sentence in home confinement (Dkt. 186).[1] He argues that this relief is warranted because his race,

---

[1] To the extent that Butler seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the Bureau of Prisons has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Butler's request for home confinement under 18 U.S.C. § 3582(c). Courts granting

hypertension, and obesity place him at higher risk of severe illness from COVID-19. For the reasons that follow, Butler's motion is denied.[2]

## I. LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020). Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary

---

compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

2

and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

## II. ANALYSIS

### A. Extraordinary and Compelling Circumstances

Butler argues that his race, hypertension, and obesity place him at higher risk of severe illness from COVID-19 and, therefore, constitute extraordinary and compelling reasons for release. With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). See Elias, 984 F.3d at 521.

Although the CDC does not consider race to be one of the factors that increases the likelihood that an individual will suffer the more severe symptoms of COVID-19, see United States v. Lamar, No. 18-20183, 2020 WL 7319431, at *3 (E.D. Mich. Dec. 10, 2020), the CDC recognizes both hypertension and obesity as conditions that "can" make an individual more likely to suffer severe illness from COVID-19.[3] However, two developments undercut Butler's argument that his hypertension and obesity presently constitute extraordinary and compelling circumstances

---

[3] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/EMJ8-SNKU].

3

warranting release. First, after filing the instant motion, Butler contracted COVID-19 and subsequently recovered therefrom. Def. Supp. Br. at 2 (Dkt. 216); BOP Medical Records at PageID.1455 (Dkt. 225-1). Under the CDC's guidance, Butler's risk of reinfection is low: "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[4] This Court and others have held that a defendant's low risk of reinfection is not an extraordinary and compelling reason warranting release. See, e.g., United States v. Johnson, No. 11-20493, 2021 WL 822495, at *3 (E.D. Mich. Mar. 4, 2021); United States v. Jackson, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021); United States v. English, No. 19-20164, 2021 WL 267774, at *2 (E.D. Mich. Jan. 27, 2021). This conclusion is consistent with Sixth Circuit authority requiring courts to refrain from granting compassionate release based on a defendant's generalized fear of contracting the virus. See Ramadan, 2020 WL 5758015 at *2.

Second, after recovering from COVID-19, Butler received the two-dose Pfizer-BioNTech COVID-19 vaccine. BOP Immunization Records (Dkt. 225-2). He received the second dose on April 29, 2021. Id. at PageID.1600. Because more than two weeks have elapsed since then, Butler is now fully vaccinated, meaning that he is protected to the fullest extent by the vaccine.[5] According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[6] Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and

---

[4] CDC, "Reinfection with COVID-19," https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html [https://perma.cc/L45Y-LSLQ].

[5] CDC, "COVID-19 Vaccines That Require 2 Shots," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/744W-B5MX].

[6] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/3NUV-7F36].

hospitalization among people of all ages eligible to receive them." Id. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." Id. Based on the vaccine's high efficacy, multiple courts have determined that, once a defendant is vaccinated, his health conditions that may have previously placed him at higher risk of severe illness from COVID-19 can no longer serve as justification for granting compassionate release. See, e.g., United States v. Groom, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021); United States v. Miller, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021); United States v. Gabbard, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021). This Court is likewise persuaded that, due to the protection afforded by the vaccine, Butler's hypertension and obesity do not constitute extraordinary and compelling reasons justifying compassionate release.

Butler's low risk of reinfection, coupled with the fact that he is fully vaccinated, negate finding that Butler's health conditions are extraordinary and compelling reasons to grant him compassionate release. Even if Butler had shown the existence of extraordinary and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

The § 3553(a) factors weigh against granting Butler release. Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. Before committing the instant offense, Butler was convicted for a drug offense and for a weapons offense. In the instant offense, Butler had a significant role in a major heroin distribution network. Heroin is classified as a Schedule I drug due to its high potential for abuse.

The circulation of such an addictive drug in the community presents a grave danger to the community's health and wellbeing. Butler argues that his offense was "one of non-violence." Mot. at 4 (Dkt. 186). However, Butler's argument is undercut by the fact that firearms were found in his home, along with drug distribution materials and a significant amount of money. At minimum, this discovery indicates that Butler was prepared to use firearms in connection with his drug distribution efforts. Butler's crimes were serious, as evidenced by the fact that he received a ten-year custodial sentence. Releasing Butler after serving only a little over a year and a half of his sentence would not promote respect for the law or protect the public from further crimes by Butler.

Butler appears to argue that his post-sentencing conduct favors granting release. Specifically, he argues that he is a "town driver" for his prison, which is a "position[] of trust" as it entails driving prisoners outside of the prison facility to places such as airports and bus stations. Def. Supp. Br. at 4. The Court commends Butler on his town driver position and encourages him to continue to take steps towards rehabilitation. However, the fact that Butler is trusted to work as a town driver for his prison does not outweigh the other considerations discussed above. If released now, there is a real possibility that he would commit more crimes, specifically drug distribution.

For these reasons, the § 3553(a) factors weigh against granting Butler's motion.

### III. CONCLUSION

For the reasons stated above, Butler's motion for home confinement (Dkt. 186) is denied.

SO ORDERED.

Dated: June 17, 2021  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge